Filed 4/28/23  P. v. Martinez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN PETER MARTINEZ,<br><br>    Defendant and Appellant. | B322154<br><br>Los Angeles County<br>Super. Ct. No.<br>VA066428-02 |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

This is Jonathan Peter Martinez's third appeal in this case. The first was a direct appeal from his convictions for the first degree murders of two victims. We affirmed the convictions. (*People v. Martinez* (Mar. 29, 2004, B164263) [nonpub. opn.] (*Martinez I*).) The second was Martinez's appeal from the superior court's 2019 order denying his petition for resentencing under Penal Code section 1172.6.[1] We affirmed that order in 2021. (*People v. Martinez* (Sept. 22, 2021, B301347) [nonpub. opn.] (*Martinez II*).) This third and current appeal is from the superior court's 2022 order denying Martinez's second petition for resentencing under section 1172.6. Again, we affirm.

## BACKGROUND

As the facts of Martinez's crimes are largely irrelevant to our analysis, we summarize them only briefly.[2]

On the evening of July 22, 2001, a woman who was in her backyard in Downey heard two gunshots. She peered into the alley behind her yard and saw two men " 'casually' " walking

---

[1]    References to statutes are to the Penal Code. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2]    We previously granted Martinez's "motion to incorporate the record" in *Martinez II*, including "the prior pleadings and jury instructions." In *Martinez II*, we granted Martinez's request that we take judicial notice of "the entire record[ ]" in his direct appeal and the related habeas proceeding. As the truth of the facts of the crimes recited in *Martinez I* are not necessary for our resolution of this appeal, we summarize them only for the basis of Martinez's convictions. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459-460.)

away from a two-door car stopped in the alley. She called the police. A responding officer found the bodies of Rudy Estrada and his wife or girlfriend Gabrielle Almaraz in the driver's and front passenger seats of the car. Each victim had been shot once in the head at the left ear. Estrada had been shot at point blank range, with the gun's muzzle touching his skin, and Almaraz had been shot from a distance of less than three feet. (*Martinez I*.)

Martinez's palm print and fingerprint were found on the outside of the car. Police also found a fingerprint belonging to Jacob Crespin. After speaking with Crespin, authorities identified Martinez as a suspect. Police arrested Martinez, who at first "denied knowing anything about the killings." Eventually, Martinez told detectives he, Crespin, and Estrada "were friends and 'home boys.' " Martinez claimed Crespin shot the victims without warning. Martinez admitted having "handled the gun earlier in the day," but he denied having "provided" it to Crespin. Martinez told the detectives he and Crespin were both in the back seat and he "pushed the seat in front of him forward," got out, and ran. Forensic evidence presented at trial contradicted Martinez's account. (*Martinez I*.)

The People charged Martinez and Crespin with two counts of murder. The information alleged Crespin personally used and discharged a firearm. Martinez's motion to sever his trial from Crespin's was granted. Crespin was tried first and acquitted of both murders. In Martinez's trial the jury convicted him of two counts of first degree murder. The trial court sentenced Martinez to 50 years to life in prison. (*Martinez I*.)

The trial court instructed Martinez's jury on direct aiding and abetting (CALJIC Nos. 3.00 and 3.01) and first and second degree murder (CALJIC Nos. 8.00, 8.10, 8.20, and 8.30). The

court's murder instructions also included the definition of "malice aforethought" (CALJIC No. 8.11).  The court did not instruct the jury on the felony-murder rule or the natural and probable consequences doctrine.  (*Martinez II*.)

In March 2004, another panel of this court affirmed Martinez's convictions and denied his related petition for a writ of habeas corpus.  (*Martinez I*.)

Some 15 years later, on June 17, 2019, Martinez filed a petition for resentencing under section 1172.6, using a preprinted form.  The court appointed counsel for Martinez (Deputy Alternate Public Defender Jeffrey C. Kelley), the prosecution filed a response to the petition, and Martinez filed a reply.  In his reply and at the hearing, Martinez's counsel argued that, by checking " 'all of the appropriate boxes' " on the form, Martinez had made " 'a sufficient showing of a prima facie case in order for the court to issue an order to show cause.' " (*Martinez II*.)

The superior court denied Martinez's petition.  The court noted Martinez's jury had not been instructed on either felony murder or the natural and probable consequences doctrine, nor did the People " 'proceed on those theories.' "  In a later-issued minute order, the court stated it had relied on Martinez's petition and reply, the prosecution's response and exhibits, the jury instructions, the verdict forms, the preliminary hearing transcript, and the court of appeal opinion on direct appeal in ruling on the petition.  As we noted, we affirmed the court's order.  (*Martinez II*.)

On April 6, 2022, Martinez filed a second petition for resentencing.  On a preprinted form, Martinez checked boxes stating the prosecution had filed an information against him that

4

allowed it "to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on [his] participation in a crime"; he had been convicted of murder "following a trial"; and he "could not presently be convicted of murder . . . because of changes made to Penal Code §§ 188 and 189."[3] Martinez requested the appointment of counsel.

The court reappointed the same attorney who had represented Martinez in the 2019 proceedings. On July 12, 2022, the prosecution filed an opposition to Martinez's petition. The prosecution argued, "[W]ithout getting into the factual content supporting the conviction, a review of the jury instructions and verdicts establishes that the jury found beyond a reasonable doubt that petitioner Martinez acted with express malice for purposes of both first-degree murder convictions. The jury was instructed that the crime of first-degree murder required a joint operation of act and intent, and that 'the crime of murder in the first degree requires the specific intent to kill.' " The prosecutor submitted a disk labeled, "Reporter's Transcript on Appeal; COA opinions; Clerk's Transcript."[4] Martinez's counsel did not file a reply to the opposition.

Counsel appeared before the court on July 12, 2022. Martinez was not present. His attorney stated, "He is in state custody." The court noted it "did issue a tentative."[5] Martinez's

---

[3]   The "I ____ declare" line on the petition was left blank but Martinez signed the petition on the second page.

[4]   The record on appeal does not include the disk.

[5]   The record on appeal does not include the tentative.

counsel replied, "Yes, Your Honor. I will submit on the reply as filed, as it related to the original petition, because the issues are identical as to why I believe a prima facie case has been established."[6]

The court said, "I would be inclined to adopt the court's tentative, which indicates that Mr. Martinez remains ineligible for relief, notwithstanding the amendments under SB 775." The court asked, "Anything else by either side?" Both attorneys replied, "No, Your Honor." The court then stated, "So over the defense objection, the petition under 117[2.6] is summarily denied. The court does not find a prima facie case; does not order an order to show cause or an evidentiary hearing for the reasons stated in the tentative." The court asked Martinez's counsel if he would notify his client; counsel said he would and noted he would file a notice of appeal on his behalf.

Martinez appealed and we appointed counsel to represent him. After examining "the entire record on appeal," counsel filed an opening brief stating she had "not found any arguable issues to raise on appeal" and asking this court to "follow the procedures set forth in *People v. Serrano* (2012) 211 Cal.App.4th 496." Counsel stated she had written to Martinez "and explained [her] evaluation of the record on appeal and [her] intention to file this pleading." Counsel said she had sent Martinez "the transcripts of the record on appeal," as well as a copy of her brief, and informed

---

[6]      As appellate counsel notes, Martinez's attorney was referring to the reply brief he had filed in the 2019 proceedings. He told the court, "I did review [the prosecutor's] supplemental opposition today, and again, I will still submit on the original reply I filed as to the original petition."

Martinez of his right to file a supplemental brief. We have not received a supplemental brief from Martinez.

## DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) The legislation substantially modified the law governing accomplice liability for murder. It eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowed the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill 1437 also authorized—through new section 1172.6—an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction if he could not have been convicted of murder because of the legislation's changes to the definition of the crime. (See *Lewis, supra,* 11 Cal.5th at pp. 959-960; *Gentile, supra,* 10 Cal.5th at p. 843.) Senate Bill No. 775, effective January 1, 2022, expanded the group of eligible petitioners to those convicted of murder "under any theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551.)

If the petitioner files a "facially sufficient" petition, he is entitled to the appointment of counsel, if requested. (*Lewis, supra,* 11 Cal.5th at p. 970.) The court must direct the prosecutor to file a response to the petition, permit the petitioner to file a reply, and determine if the petitioner has made a prima facie case

7

showing he is entitled to relief. (§ 1172.6, subd. (c); see *Lewis*, at pp. 959-960.)

In determining whether the petitioner has carried his burden of making the requisite prima facie showing, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." '[7] . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

While this appeal was pending, our Supreme Court decided *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). The high court held that, because an appeal from the denial of a section 1172.6 petition does not implicate a constitutional right

---

[7] The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3).)

8

to counsel, the protections afforded by *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*)—including an independent review of the record by courts of appeal—do not apply. (*Delgadillo*, at pp. 230-231.) The court, however, invoked its inherent supervisory powers to prescribe a basic procedural framework for use in section 1172.6 no-issues appeals, leaving it to the appellate courts to develop and tailor additional procedures as they see fit. (*Delgadillo*, at pp. 231-232.)

Under the *Delgadillo* framework, once appointed appellate counsel files a brief stating she has been unable to find any arguable issue, the appellate court should send a copy of it to the defendant along with a notice informing him of the right to file a supplemental brief or letter, and that if he does not do so, the court may dismiss the appeal. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231-232.)

Here, after we received counsel's *Serrano* brief, we issued an order directing counsel to send the record and a copy of her brief to Martinez. Our order stated, "Within 30 days of the date of this notice, appellant may submit a supplemental brief or letter stating any grounds for an appeal, or contentions, or arguments that appellant wishes this court to consider." However, our letter did not tell Martinez that, if he did not file a supplemental brief, we could deem his appeal abandoned and dismiss it. Accordingly, we exercise our discretion to undertake a review of the entire record under *Wende*.

The court in Martinez's trial instructed the jury on first and second degree murder and direct aiding and abetting. The court told the jury, "The crime of murder in the first degree requires the specific intent to kill." (CALJIC No. 3.31.) The court instructed the jurors that murder requires malice aforethought,

9

and it defined express and implied malice. (CALJIC Nos. 8.10, 8.11.) The court told the jury, "[A]ny kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree." (CALJIC No. 8.20.) "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." (*Ibid*.) The court did not instruct the jury on felony murder or the natural and probable consequences doctrine. Nor did the court instruct the jury with any instruction that could have permitted jurors to convict Martinez on a theory under which malice could have been imputed to him based solely on his participation in the crimes.

In convicting Martinez of the first degree murders of both Estrada and Almaraz, the jury necessarily found Martinez was either the actual killer or an aider and abettor who acted with intent to kill. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945-946.) Accordingly, he is ineligible for resentencing. (*Id*. at pp. 943-946 [affirming summary denial of petition]; see *Gentile*, *supra*, 10 Cal.5th at p. 848 [Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor must possess malice aforethought]; cf. *People v. Farfan* (2021) 71 Cal.App.5th 942, 947, 952 [jury's verdict and finding on special circumstance means it necessarily found defendant acted with intent to kill, and therefore was ineligible for section 1172.6 relief as a matter of law]; *People v. Lopez* (2023) 88 Cal.App.5th 566, 570, 575-578, 580 [same; summary denial of petition affirmed].)

We have independently reviewed the record and find no arguable issues.[8] We are satisfied that Martinez's counsel has fully complied with her responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *Wende, supra,* 25 Cal.3d at p. 441.)

---

[8] Less than two months before the July 2022 hearing in this case, a court of appeal held a petitioner has a constitutional right to be present at a section 1172.6 evidentiary hearing (or competently waive his presence). (*People v. Basler* (2022) 80 Cal.App.5th 46, 51, 57-58.) As noted, here, Martinez was not present at the hearing on whether he had established a prima facie case. Nothing in the record indicates his counsel asked the court to order him out from state prison or objected to the court proceeding in his absence. *Basler* involved an evidentiary hearing, not a hearing on whether a petitioner had made out a prima facie case. In any event, any error in the conduct of the hearing in Martinez's absence was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.) Nothing Martinez could have contributed to the hearing could change the instructions given at his trial or the jury's verdicts finding him guilty beyond a reasonable doubt of two first degree murders.

**DISPOSITION**

We affirm the trial court's order denying Jonathan Peter Martinez's second petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

NGUYEN (KIM), J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.